FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA 2017 APR 25  PM 2: 09
ORLANDO DIVISION

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO. FLORIDA

**SANDRA BROGAN,** as personal representative of
The Estate of April Brogan, deceased,

      **Plaintiff,**

v.                                                                    CASE NO.: 0:17 CV-745-0R1-18-KR5

**VOLUSIA COUNTY, FLORIDA, a political
subdivision of the State of Florida,**

**ARMOR CORRECTIONAL HEALTH SERVICES,
INC., a Florida corporation,**

**ARMOR CORRECTIONAL HEALTH MEDICAL SERVICES
OF NEW YORK, INC., a Florida corporation,**

**ARMOR CORRECTIONAL HEALTH SERVICES OF NEW YORK, INC.,
a Florida corporation,**

**MARILYN CHANDLER FORD**, in her individual and official capacities,

**MATT REINHART**, in his individual and official capacities,

**MELISSA DENMAN**, in her individual capacity,

**WILLIE JENKINS,** in his individual capacity,

**MARK FLOWERS**, in his individual capacity,

**LARRY LANGDON**, in his individual capacity,

**CRYSTAL MABRY**, in her individual capacity,

**ANGELA PRUDENTE,** in her individual capacity,

**JAMIE BRYANT,** in her individual capacity,

**MELVINA MCCRAE**, in her individual capacity,

**CHRISTINE GOOD,** in her individual capacity,

1

**RUSTY PERRY,** in his individual capacity,

**MAUREEN LISA O'NEIL,** in her individual capacity,

**ALICIA SMITH,** in her individual capacity,

**BARBARA WHITE,** in her individual capacity,

**ANGELA GLASPER,** in her individual capacity,

**CATHLEEN LLOYD,** in her individual capacity,

**SUSAN CUMMINGS,** in her individual capacity, and

**WAYNE SCHROCK,** in his individual capacity,

      **Defendants.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Now comes Plaintiff, SANDRA J. BROGAN, as Personal Representative of the Estate of April Brogan, Deceased, ("PLAINTIFF"), and hereby sues Defendants, and states as follows:

### PRELIMINARY STATEMENT

1. On May 1, 2015, 28-year-old April Brogan ("BROGAN"), a pretrial detainee housed in the Volusia County Branch Jail ("VCBJ") died as a result of withdrawal from opioids, a class of drugs historically used for pain relief.

2. BROGAN's preventable death occurred because of Defendants', and each of them, deliberate indifference to her serious medical needs in violation of the Fourteenth Amendment to the United States Constitution.

3. Soon after entering the jail, BROGAN began demonstrating obvious signs of withdrawal from opioids. Because of Defendants' deliberate indifference to her

obviously serious medical needs, BROGAN's condition continued to rapidly deteriorate until she was vomiting profusely.

4.      Though BROGAN and/or other detainees communicated to Defendants her need for immediate medical attention, thereby making them fully aware that she was in need of medical treatment, at no time was BROGAN ever provided with any medical attention or treatment after she was booked into VCBJ. Rather than providing her with the medical attention and treatment that she so desperately needed, BROGAN was forced to clean up her own vomit and left to suffer an agonizing death in her cell.

5.      The stench of BROGAN's vomiting permeated throughout BROGAN's cell block, and provided notice to the Defendants that BROGAN was seriously ill and needed medical attention. However, Defendants ignored BROGAN and were deliberately indifferent to her medical needs.

6.      Alone in her cell, BROGAN ultimately died from opioid withdrawal, fueled by her consistent vomiting. BROGAN's demise could have undoubtedly been prevented had Defendants provided her with appropriate medical attention and treatment – treatment that would have saved her life.

7.      Defendants' acts and/or omissions, which are incompatible with the dictates of the United States Constitution, directly caused BROGAN's death. Had Defendants fulfilled their clearly established constitutional obligations, BROGAN would unquestionably still be alive today.

8.      At all relevant times, Defendants had knowledge that BROGAN was a repeated drug offender and detainee, had a history of drug abuse, was on probation for a drug-related offense, and was severely ill and was suffering from withdrawal symptoms.

3

9.     Each Defendant caused BROGAN grievous physical and mental pain, suffering, anxiety, harm, and caused her subsequent death.

## Jurisdiction and Venue

10.     This is a civil rights action in which PLAINTIFF seeks relief for violations of her late daughter's rights secured and guaranteed by Title 42, Section 1983 of the United States Code ("U.S.C."), the Eighth and Fourteenth Amendments to the United States Constitution, the laws of the United States, and the laws of the State of Florida and, further, is brought pursuant to Florida's Wrongful Death Act, §§ 768.16-768.27, Florida Statutes.

11.     Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1367. Jurisdiction supporting PLAINTIFF's claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988.

12.     Venue in this judicial district is proper pursuant to 28 U.S.C. §§ 1391(b)(2), (e)(1) and (e)(2) because all the wrongful acts complained of occurred within Volusia County, Florida and all parties were residents of the State of Florida at the time of the events giving rise to this litigation.

13.     Supplemental pendent jurisdiction is based on 28 U.S.C § 1367 because the violations of federal law alleged are substantial and the pendent cause of action derive from a common nucleus of operative facts.

14.     Pursuant to the Florida Sovereign Immunity Act, as codified in Fla. Stat. §768.28, sovereign immunity is waived for PLAINTIFF'S state law claims against the government Defendants.

15.     On May 15, 2015 and May 27, 2016, PLAINTIFF filed timely written notices of claim as required by Fla. Stat. § 768.28.

16.     Defendants, Armor Correctional Health, Inc., Armor Correctional Health Medical Services of New York, Inc., and Armor Correctional Health Services of New York, Inc., (hereinafter referred to as "THE ARMOR DEFENDANTS"), are private corporations, and therefore no notice of claims against it is required.

17.     All conditions precedent to the bringing of this action against Defendant, Volusia County ("COUNTY"), have been performed or have been waived. Specifically, PLAINTIFF has complied with the provisions of Federal Rule of Civil Procedure 9(c) and Section 768.28 Florida Statutes by serving upon Defendant COUNTY by Certified Mail, the attached statutory notices. (See attached Exhibit "A").

18.     This action is brought without prejudice to any related claims against the above-named Defendants or other persons arising under state or federal law including, but not limited to, claims under Ch. 766 and § 768.28 of the Florida Statutes, and claims under 42 U.S.C. §§ 1983 and 1988.

## PARTIES

19.     At all times pertinent hereto, the decedent, BROGAN, was a citizen of the United States of America and was a resident of the State of Florida.

20.     PLAINTIFF Sandra Brogan has been appointed personal representative of BROGAN's estate.

21.     PLAINTIFF is a citizen of the United States of America and a resident of the State of Florida.  Letters of administration were granted to her by the Circuit Court of the

Seventh Judicial Circuit in and for Volusia County, Florida, Probate Division, on or about February 14, 2017.

22.     PLAINTIFF, in her capacity as personal representative of the ESTATE, may bring all claims other than wrongful death claims because all BROGAN's constitutional and tort claims survived her death under Florida's wrongful death statute, Fla. Stat. § 768.28, and in the case of constitutional claims, also under 42 U.S.C. § 1988.

23.     Defendant COUNTY is a duly organized political subdivision of the State of Florida. The COUNTY, by and through its Division of Corrections, was responsible for the operation and administration of VCBJ, including establishing policies for its operation; policies for the protection and safety of detainees under its care, including the provision of adequate physical and mental health care; and general operation of VCBJ in accordance with the law.

24.     THE ARMOR DEFENDANTS are private corporations, duly organized in the State of Florida, doing business in the State of Florida. (See attached Exhibit "B").

25.     At all times relevant, Defendant MARILYN FORD ("FORD") was the acting Director of the Volusia County Division of Corrections, which is responsible for the exercise of administrative supervision and control and has all functions, duties and responsibilities over matters relating to corrections and rehabilitation and the VCBJ. The Division of Corrections is also responsible for the supervision and control over all facilities, programs and services consistent with the laws of the State of Florida.

26.     At all times relevant, Defendant FORD was responsible for the operation of the VCBJ, including establishing policies for its operation; policies for the protection and safety of detainees under her authority and care, including the provision of adequate

6

physical and mental health care; and general operation of VCBJ in accordance with the law.

27.    At all times relevant, Defendant FORD was the final policymaker as to her conduct as Director of the Division of Corrections and her execution of her policies, practices, and customs in performing her duties.

28.    Defendant FORD is sued in her individual and official capacities.

29.    At all times relevant, Defendant Warden MATT REINHART ("WARDEN REINHART") was the warden of VCBJ at the time of the incident described in this Complaint. WARDEN REINHART was the executive officer responsible for the VCBJ and its employees and agents.

30.    At all times relevant, Defendant WARDEN REINHART was responsible for the operation of the VCBJ, including establishing policies for its operation; policies for the protection and safety of detainees under his care, including the provision of adequate physical and mental health care; and general operation of VCBJ in accordance with the law.

31.    At all times relevant, Defendant WARDEN REINHART was the final policymaker as to his conduct as warden and his execution of his policies, practices, and customs in performing his duties.

32.    Defendant WARDEN REINHART is sued in his individual and official capacities.

33.    At all times relevant, THE ARMOR DEFENDANTS were Florida entities which contracted with the COUNTY, FORD and WARDEN REINHART to provide physical

and mental health care, services, screening, assessment, treatment, and attention to those detained at the VCBJ.

34.    THE ARMOR DEFENDANTS were obligated to supply doctors, nurses, and other medical services to FORD, WARDEN REINHART, the COUNTY, and COUNTY employees for the use of the detainees at VCBJ.

35.    Defendants RUSTY PERRY, MAUREEN LISA O'NEIL, ALICIA SMITH, BARBARA WHITE, ANGELA GLASPER, CATHLEEN LLOYD, SUSAN CUMMINGS, and WAYNE SCHROCK are the "ARMOR MEDICAL STAFF." Each of these individuals were employees of ARMOR and/or COUNTY. They were part of the physical and mental health team and were directly responsible for BROGAN's intake and/or care while she was detained at the VCBJ.

36.    Defendants MELISSA DENMAN, WILLIE JENKINS, MARK FLOWERS, LARRY LANGDON, CRYSTAL MABRY, ANGELA PRUDENTE, JAMIE BRYANT, MELVINA MCCRAE, CHRISTINE GOOD are the "CORRECTIONS OFFICER DEFENDANTS." Each of these individuals were employees of the COUNTY and were assigned to the VCBJ where BROGAN died.    The CORRECTIONS OFFICER DEFENDANTS were directly responsible for BROGAN's custody, supervision, and care at the VCBJ. These Defendants are sued in their individual capacities.

37.    All references to Defendants' titles and positions throughout this Complaint refer to their status at or about the time of BROGAN's custody and death – April 29, 2015 and May 1, 2015, respectively.

8

38.    Each of the Defendants acted under color of law—either by being a government entity, government employee, or under contract with a government entity or government employee.

39.    Each individual Defendant was acting within the course and scope of his or her employment.

40.    Beneficiaries of this action include:

a.  The Estate of April D. Brogan ("ESTATE"); and,

b.  The decedent's surviving minor children, Brenden Hopkins (DOB 12/29/2005) and Bella Blevins (DOB 09/07/2011) (collectively, "the CHILDREN").

## General Allegations

41.    The claims asserted herein arise from acts, failures to act, and omissions committed, and policies, procedures, and customs in place and/or implemented, while BROGAN was in the custody of the COUNTY and during her pre-trial detention at the VCBJ from on or about April 29, 2015 to May 1, 2015, the date of her death, during which time the Defendants, all of whom were acting under the color of law, violated the known and clearly established Constitutional rights of BROGAN to due process of law and to necessary medical care and treatment.

42.    All actions of Defendant COUNTY, as alleged herein, were "operational" level decision making activities. These activities do not fall into the category of institutional acts which involve policy making or planning, and do not involve discretionary governmental functions. As such, Defendant COUNTY is not immune from tort liability for this incident and, in accordance with Article X, Section 13 of the Florida Constitution,

Defendant COUNTY has waived sovereign immunity from liability for these torts. As to PLAINTIFF's Section 1983 claims, government immunity is no defense to the Civil Rights action.

43.    At all times material hereto, the COUNTY owned and operated the VCBJ pursuant to Fla. Stat. §§ 951.06 and 951.23(1)(a). Defendants COUNTY, FORD, and WARDEN REINHART and/or their agents, were responsible for establishing customs, policies, and procedures to regulate the conduct of all persons working in the VCBJ.

44.    By its ownership and operation of the VCBJ, Defendant COUNTY assumed responsibility for the confinement, segregation, supervision and care of, and provision of medical services to, pretrial detainees generally, and BROGAN, specifically. BROGAN was detained at the VCBJ from on or about April 29, 2015 to May 1, 2015, the date of her death. During these periods of detention, BROGAN was within the continuous exclusive custody, supervision, and control of Defendants COUNTY, FORD, WARDEN REINHART and the CORRECTIONS OFFICER DEFENDANTS. During these periods of detention, BROGAN was under the continuous and exclusive medical care and supervision of Defendants COUNTY, THE ARMOR DEFENDANTS, and ARMOR MEDICAL STAFF.

45.    At the time of her booking, or immediately thereafter, and based on her prior arrest record, made accessible and known to Defendants, each of them, Defendants knew that BROGAN was a known and repeated drug offender, a repeated detainee at VCBJ, had a history of drug abuse and had known seizures documented during previous stays at the VCBJ, was on probation for drug-related offense(s), exhibited signs of intoxication and/or drug use, was suffering from opioid withdrawal, and should have been medically supervised upon booking into the VCBJ.

46.   During the intake process of her detention at the VCBJ, THE ARMOR DEFENDANTS, ARMOR MEDICAL STAFF, and CORRECTIONS OFFICER DEFENDANTS either failed to perform and/or failed to adequately perform medical screening, assessment, evaluation, or referral of BROGAN at intake. Defendants did not review BROGAN's prior jail records, medical records/chart and information recorded by THE ARMOR DEFENDANTS' personnel and/or Corizon, the medical provider that was in place just prior to ARMOR's contract with the COUNTY. All arrest records, jail records, and medical records were accessible to and/or in possession of all Defendants.

47.   At all times material hereto, THE ARMOR DEFENDANTS and the ARMOR MEDICAL STAFF were under contract with the COUNTY to provide health care services to detainees housed at VCBJ. Accordingly, at all times material hereto, THE ARMOR DEFENDANTS and the ARMOR MEDICAL STAFF assumed responsibility for the health, safety, well-being, supervision and care of, and provision of medical services to, pretrial detainees generally, and BROGAN, specifically, at the VCBJ.

48.   At all times material hereto, THE ARMOR DEFENDANTS and ARMOR MEDICAL STAFF acted within the scope of their contractual authority from the COUNTY and in furtherance of the interests of the COUNTY, FORD, and WARDEN REINHART with regard to its operations at the VCBJ.

49.   Defendants COUNTY, FORD, WARDEN REINHART, CORRECTIONS OFFICER DEFENDANTS, THE ARMOR DEFENDANTS, and ARMOR MEDICAL STAFF employed, participated in, authorized, ratified, and/or failed to intervene to prevent unreasonable harm, injury, and death, and with callous disregard and deliberate indifference for BROGAN's constitutional rights, and in a manner that shocks the

11

conscience and offends traditional notions of decency, in their failure to provide medical care and treatment to BROGAN, all of which led to her wrongful and untimely death.

50.    Defendants COUNTY, FORD, WARDEN REINHART and THE ARMOR DEFENDANTS implemented and/or had in place, at all times relevant, policies and customs that violated and/or that were applied in such a way that they violated the constitutional rights of pre-trial detainees at the VCBJ, including BROGAN, to receive prompt and adequate medical care to treat serious medical needs.

51.    Prior to BROGAN's death, the Defendants COUNTY, FORD, WARDEN REINHART and THE ARMOR DEFENDANTS were informed of and knew of problems in the care, custody, and control of inmates housed in VCBJ, specifically those inmates suffering from drug withdrawal. Defendants COUNTY, FORD, WARDEN REINHART and THE ARMOR DEFENDANTS knew that said problems would create a substantial risk of physical injury or death. Such problems included, but were not limited to, low staffing levels, use of non-medical staff to perform professional medical functions, lack of training concerning recognition and response to emergent conditions, failure of staff to properly conduct and document medical screening of inmates, failure of staff to properly conduct and document segregation watches, difficulty in delivery of medical care to inmates, lack of an infirmary in the facility, and delay in treatment and transfer to outside facilities, including emergency facilities, and willfully and intentionally ignoring those inmates suffering from drug withdrawal and allowing them to detox in their jail cell without any medical intervention.

52.    Notwithstanding the foregoing, the Defendants COUNTY, FORD, WARDEN REINHART and THE ARMOR DEFENDANTS failed to address or correct these

12

deficiencies, failed to enact or promulgate sufficient policies or procedures or employed a custom of violating their own policies and procedures, and failed to properly equip, staff, hire, train, re-train and supervise competent administrators, officers and health care providers, whose job it was to confine, segregate, supervise and care for, and provide medical services to, pretrial detainees generally, and BROGAN, specifically, resulting in the conduct described below.

53.     At the time that she was booked into the jail facility, all Defendants knew that BROGAN was involved in prior arrests for drug-related offenses, had a history of drug addiction and abuse, had prior drug withdrawal episodes while detained at VCBJ, and was in violation of the terms of her probation related to her drug related offenses.

54.     Defendants COUNTY, THE ARMOR DEFENDANTS, ARMOR MEDICAL STAFF, and the CORRECTIONS OFFICER DEFENDANTS failed to properly document the information provided by BROGAN at intake, failed to conduct any follow-up inquiry of her healthcare providers after intake, designated BROGAN for housing in general population, and made no provision for BROGAN's medical care.

55.     Immediately after being booked into the facility, BROGAN became ill and was unable to eat and/or drink, vomiting up any food or fluids which she attempted to ingest, including constant emission of foul smelling bodily discharge, bloody discharge, and foaming at her mouth.

56.     During her period of detention at VCBJ, the Defendants COUNTY, THE ARMOR DEFENDANTS, ARMOR MEDICAL STAFF, AND the CORRECTIONS OFFICER DEFENDANTS purposefully, maliciously, wantonly and/or with deliberate indifference to and/or callous and reckless disregard for BROGAN's rights and serious

medical needs, denied BROGAN necessary and adequate medical screening, monitoring, evaluation, assessment, care, intervention, referral, and treatment and/or access thereto.

57.    During BROGAN's period of detention at the VCBJ, Defendants COUNTY, THE ARMOR DEFENDANTS, and ARMOR MEDICAL STAFF either provided BROGAN no medical and nursing care or failed or refused to provide adequate medical care and were otherwise deliberately indifferent to BROGAN'S serious medical conditions and needs, all of which shocks the conscience and violates traditional notions of decency.

58.    While confined in the VCBJ, BROGAN became immediately and progressively more physically and medically unstable, dehydrated and weak while continuing a constant emission of foul smelling bodily discharge, vomit, bloody discharge, and foaming at her mouth, all of which Defendants were aware of prior to BROGAN's death.

59.    During the aforementioned period of detention at the VCBJ, BROGAN, and/or other inmates, directly or indirectly, and repeatedly informed the Defendants, each of them, that BROGAN was physically ill and unstable and required immediate hospitalization and medical assessment, intervention, referral, and care; that BROGAN was emitting foul smelling bodily discharge, bloody discharge, vomiting, and foaming at her mouth; and that BROGAN needed medical attention and help for her acute medical conditions.

60.    BROGAN'S placement in the general population, instead of medical hospitalization, care, and treatment, and the jail staff's failure to make proper observations

14

of her reduced her, access to necessary medical supervision and care, which would have kept her alive.

61.   Defendants failed to follow their own policies which required scheduled checks of each inmate, to include wristband checks of each inmate.

62.   BROGAN's condition deteriorated to the point that she had difficulty walking unassisted and began to vomit bilious fluid, she emitted foul smelling bodily discharge, bloody discharge, and was foaming at her mouth.

63.   Almost instantaneously and, at the time of her booking, or immediately thereafter, it was apparent even to a casual, untrained observer that BROGAN was seriously ill and required emergency medical attention.

64.   BROGAN's criminal history, prior jail history, medical history, and signs and symptoms clearly indicated that she was high risk for suffering from acute opioid withdrawal, which, in fact, led to her death.

65.   On the afternoon of May 1, 2015, BROGAN aspirated a quantity of the bilious fluid she had been vomiting, which, in whole or in part, caused her death.

66.   Acute opioid withdrawal is an easily treated medical condition, but one which can be life-threatening, and was, here, if not properly treated.

67.   A postmortem preliminary autopsy report revealed that BROGAN died from opioid withdrawal.

68.   At any time prior to her death, BROGAN's acute condition could have been remedied by simple medical supervision and/or medication.

69.   At all times relevant, it was the policy, practice, custom and/or procedure of Defendants COUNTY, FORD, WARDEN REINHART, the CORRECTIONS OFFICER

15

DEFENDANTS, THE ARMOR DEFENDANTS, and ARMOR MEDICAL STAFF and/or their employees who have final decision-making authority, to refuse and/or delay providing adequate and necessary medical screening, assessment, evaluation, monitoring, treatment, intervention, referral, and care to pre-trial detainees in the custody of VCBJ. This policy, practice, custom and/or procedure constitutes deliberate indifference to and/or a callous disregard for the clearly established rights and known serious medical needs of BROGAN, and other pre-trial detainees in the custody of the COUNTY, all of which shocks the conscience and violates traditional notions of decency.

70.    At all times relevant, Defendants COUNTY, FORD, WARDEN REINHART, and THE ARMOR DEFENDANTS, and THE ARMOR MEDICAL STAFF had in place policies, customs, practices and/or procedures governing the medical screening, assessment, evaluation, monitoring, treatment, intervention, referral, and care of pre-trial detainees in the custody of VCBJ that were deliberately indifferent to the Constitutional due process rights of said pre-trial detainees, including BROGAN's rights, such that Constitutional rights violations were likely and substantially certain to, and in the case of BROGAN, did occur.

71.    Notwithstanding the foregoing, all Defendants failed to make prescribed, frequent, close observations of BROGAN; failed to correctly document their observations of BROGAN, and/or deliberately falsified the documentation of their observations of BROGAN; failed to notify BROGAN's emergency contact concerning their observations of BROGAN; failed to provide necessary medical care for BROGAN's serious medical condition; failed to alert medical personnel concerning their observations of BROGAN;

16

failed to request medical assistance for BROGAN; and failed to initiate a timely emergency medical response for BROGAN.

72.    As a direct and proximate result of the foregoing described conduct of the Defendants, each of them, BROGAN suffered the following compensable injuries and damages: (A) physical pain and suffering and emotional trauma and suffering in the moments before her death; and (B) death.

73.    As a direct and proximate result of the foregoing described conduct of the Defendants, each of them, the ESTATE suffered the following compensable injuries and damages: (A) funeral and related medical expenses; and (B) loss of prospective net accumulations.

74.    As a direct and proximate result of the foregoing described conduct of the all Defendants, the CHILDREN suffered the following compensable injuries and damages (A) loss of support and services; (B) loss of companionship, instruction, and guidance; and (C) mental pain and suffering.

75.    As a further direct and proximate result of the foregoing described conduct of the Defendants, PLAINTIFF has been compelled to retain the services of counsel, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to PLAINTIFF.

### CLAIMS FOR RELIEF

### COUNT ONE
### VIOLATION OF CIVIL RIGHTS – 42 U.S.C. § 1983
### (ALL DEFENDANTS)

76.    PLAINTIFF restates and incorporates paragraphs 1 to 75 by reference as if fully rewritten herein.

77.    The Eighth Amendment, incorporated against the States under the Fourteenth Amendment, guarantees citizens freedom from cruel and unusual punishments.  State actors violate this guarantee when their conduct demonstrates deliberate indifference to the serious medical needs of detainees.

78.    The Fifth Amendment, also incorporated against the States, provides citizens with the constitutional right to be free from the deprivation of life and liberty without due process of law.

79.    Title 42 U.S.C. § 1983 provides a civil remedy for violations of these constitutional rights by those acting under color of law.

80.    Defendants COUNTY, FORD, WARDEN REINHART, CORRECTIONS OFFICERS DEFENDANTS, THE ARMOR DEFENDANTS, and ARMOR MEDICAL STAFF, who were acting under color of law, violated these constitutional rights when they:

    a. Booked BROGAN into a jail rather than a place where she could have received necessary medical treatment.

    b. Failed to conduct an appropriate physical health screening of BROGAN, which would have detected that she was suffering from a serious medical condition.

    c. Failed to appropriately classify BROGAN as a detainee with serious medical needs and failed to provide appropriate treatment as should be provided to such a detainee.

    d. Failed to administer necessary medicine to BROGAN.

    e. Failed to check BROGAN's vital signs and physical condition after she was placed in general population.

f.  Failed to perform or adequately perform regular checks and observations of BROGAN.

g.  Failed to medically evaluate and monitor BROGAN's physical condition.

h.  Failed to give BROGAN necessary medical treatment.

i.  Did not ensure that BROGAN ultimately received necessary medical treatment.

j.  Intentionally ignored BROGAN's illness and need for medical treatment.

81.    BROGAN's physical and mental condition was serious, obvious, known, and communicated to the Defendants.

82.    The Defendants, each of them, displayed deliberate indifference to BROGAN's serious medical needs.  They also behaved with callous, reckless disregard for these needs.

83.    The Defendants' actions and inactions led to BROGAN's harms, including death.

84.    This result, death, was foreseeable and known to the Defendants.

85.    Further, Defendants' conduct shocks the conscience and offends traditional notions of decency.

86.    BROGAN's claim survives her death and accrued to her Estate and survivors.

87.    As a direct and proximate result of these Defendants' violations of BROGAN's constitutional rights, BROGAN endured extreme physical, mental, and emotional pain and suffering just before her death, and subsequent death. The ESTATE incurred losses for funeral and burial expenses and lost net accumulations.  BROGAN'S

CHILDREN suffered: (A) loss of support and services; (B) loss of companionship, instruction, and guidance; and (C) mental pain and suffering.

**WHEREFORE,** the PLAINTIFF seeks judgment against all Defendants, jointly and severally, for:

a. Compensatory damages in an amount that will fully and fairly compensate it for its injury, damage, and loss.

b. Punitive damages, against THE ARMOR DEFENDANTS and all Defendants named in their individual capacities, in an amount that will serve to adequately punish and deter the conduct in this Count.

c. The costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

d. Any other relief the Court deems appropriate.

## COUNT TWO

**Maintaining a Pattern and Practice of
Substandard Medical Conditions for Detainees,
Causing Constitutional Violations
(Against The Armor Defendants, Defendant County, and Defendant Ford, in her
individual and official capacity, and Defendant Warden Reinhart, in his individual
and official capacity)**

88.    PLAINTIFF restates and incorporates paragraphs 1 to 87 by reference as if fully rewritten herein

89.    Defendants COUNTY, THE ARMOR DEFENDANTS, FORD, and WARDEN REINHART maintained a pattern and practice of inadequate and deplorable medical conditions for detainees at VCBJ.

90.    Defendants COUNTY, THE ARMOR DEFENDANTS, FORD, and WARDEN REINHART shared the responsibility for medical care at the VCBJ.

91.    Defendant COUNTY is ultimately responsible for all matters related to the VCBJ, to include medical care, detainees' safety and civil rights.

92.    Defendant FORD bears responsibility for medical care by virtue of her holding an office created by county ordinance in which she  was ultimately responsible for all matters related to the VCBJ, to include detainees' safety and civil rights.

93.    Defendant WARDEN REINHART bears responsibility for medical care by virtue of his holding an office as warden, which he was ultimately responsible for all matters related to the VCBJ, to include detainees' safety and civil rights.

94.    THE ARMOR DEFENDANTS bear responsibility for medical care at VCBJ because they contracted with the COUNTY, FORD, and/or WARDEN REINHART to provide that care.

95.    As part of their contract, THE ARMOR DEFENDANTS were obligated to provide an adequate level of care, and to bring any failures to provide good care to the attention of the COUNTY, FORD, and/or WARDEN REINHART.

96.    Nevertheless, all Defendants named in this Count maintained a pattern and practice of maintaining inadequate medical conditions, and displaying deliberate indifference to the health and safety of detainees. This pattern and practice routinely and

regularly caused the violations of constitutional rights of many detainees, including BROGAN.

97.     All Defendants knew of a history, custom, propensity, and pattern for their employees and/or agents at the VCBJ to fail or refuse to provide prompt and competent access to and delivery of physical health evaluation and medical treatment to detainees at the VCBJ.

98.     The Defendants' disregard of this history, and their failure to correct it, proximately caused the violation of BROGAN's constitutional rights.

99.     The Defendants named in this Count had the duty:

    a. To train, supervise, and/or instruct staff, officers, nurses, physicians, physical health personnel, and other agents and employees to respect and not violate constitutional and statutory rights of VCBJ detainees with regard to providing necessary medical care.

    b. To conduct a competent physical health screening upon intake of each detainee at VCBJ.

    c. To provide timely competent physical health assessment, evaluation, intervention, referral, care, treatment, follow-up, and attention to physically ill VCBJ detainees.

    d. To adequately train custodial and physical health staff on understanding, recognizing, reporting, and responding to issues of physical and mental health of VCBJ detainees.

    e. To monitor the physical health care and treatment provided to detainees at the VCBJ.

  f. To monitor and review the adequacy of medical and custodial staffing to ensure that adequate physical health care and treatment is provided to detainees at the VCBJ.

  g. To monitor and periodically review the classification and housing of physically ill VCBJ detainees to ensure they are properly classified and housed.

  h. To administer necessary prescription drugs and medical treatment.

  i. To comply with statutory guidelines and the standard(s) of care protecting VCBJ detainees.

  j. To establish reasonable procedures to document and correct past violations, and to prevent future violations of constitutional rights of VCBJ detainees at the VCBJ, by not condoning, ratifying or encouraging the violation of those rights.

  k. To discipline employees who violate constitutional rights.

100. The Defendants named in this Count breached the duties set forth in the previous paragraph.

101. The PLAINTIFF is informed and believes that prior to the incident involving BROGAN, the Defendants named in this Count committed or were aware of similar acts committed at VCBJ, namely:

  a. Failing to train their employees as to the applicable constitutional and statutory requirements for providing adequate physical health care.

  b. Failing to provide, or refusing to provide, timely access to and delivery of physical health care, assessment, evaluation, intervention, referral, and

treatment for VCBJ detainees with obvious or known serious physical health conditions and needs.

c. Failing to provide, or refusing to provide, timely access to and delivery of necessary prescription medications to VCBJ detainees.

d. Failing to provide, or refusing to provide, adequate housing and classification to VCBJ detainees so they would have timely and adequate access to necessary physical health care, assessment, evaluation, intervention, referral, and treatment.

e. Failing to provide or refusing to provide adequate monitoring and housing for VCBJ detainees who present a risk of serious physical or mental harm and death.

f. Failing to discipline employees who have engaged in violations of constitutional rights.

g. Condoning practices that violate constitutional rights.

102.    The Defendants named in this Count knew of this pattern or practice of causing constitutional violations to detainees, or the existence of facts, practices, customs or habits, which create the strong potential for unconstitutional acts.

103.    These customs, policies, and practices were applied in such a manner, and known by the Defendants named in this Count to be applied in such a manner, that violations of the constitutional rights of VCBJ detainees were likely and substantially certain to occur, and did occur.

104.    BROGAN was harmed and suffered death in the manner threatened by the patterns and practices set out in this Count.

105.    42 U.S.C. § 1983 provides a civil remedy against those acting under color of law who establish a pattern or practice of violations of constitutional rights.

106.    BROGAN's claim as set out in this Count survives her death and accrued to her ESTATE and survivors pursuant to the Florida Wrongful Death Act.

107.    As a direct and proximate result of these Defendants' violations of BROGAN's constitutional rights, BROGAN endured extreme physical, mental, and emotional pain and suffering, and death.  The ESTATE incurred losses for funeral and burial expenses, and lost net accumulations.  BROGAN'S CHILDREN suffered (A) loss of support and services; (B) loss of companionship, instruction, and guidance; and (C) mental pain and suffering.

**WHEREFORE,** PLAINTIFF seeks judgment against THE ARMOR DEFENDANTS, COUNTY, FORD, in her official capacity as Director of the Division of Corrections of Volusia County, and WARDEN REINHART, in his official capacity, jointly and severally, for:

    a. Compensatory damages in an amount that will fully and fairly compensate it for its injury, damage, and loss.

    b. Punitive damages, against THE ARMOR DEFENDANTS and all Defendants named in their individual capacities, in an amount that will serve to adequately punish and deter the conduct in this Count.

    c. The costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

    d. Any other relief the Court deems appropriate.

## COUNT THREE

### Wrongful Death
### (All Defendants)

108.    PLAINTIFF restates and incorporates paragraphs 1 to 107 by reference as if fully rewritten herein.

109.    This count for wrongful death is premised on the intentional and negligent acts of each of the Defendants, as described in all the other Counts of this Complaint.

110.    As a direct and proximate result of the Defendants' wrongful acts, BROGAN died.

111.    BROGAN's death was a wrongful death within the meaning of the Florida Wrongful Death Act, Fla. Stat. §§ 768.16 *et seq.*

112.    Fla. Stat. § 768.19 provides a right of action for the wrongful death when the death of a person is caused by the wrongful act and/or negligence of another.

113.    Under Fla. Stat. § 768.20, PLAINTIFF is the personal representative of the ESTATE and is entitled to prosecute this right of action on behalf of the estate and all survivors.

114.    As a direct and proximate result of these wrongful and/or negligent acts, BROGAN endured extreme physical, mental, and emotional pain and suffering, and death.  The ESTATE incurred losses for funeral and burial expenses, and lost net accumulations.  BROGAN'S CHILDREN suffered (A) loss of support and services; (B) loss of companionship, instruction, and guidance; and (C) mental pain and suffering.

**WHEREFORE,** PLAINTIFF seeks judgment against the Defendants, jointly and severally, for:

a. Compensatory damages in an amount that will fully and fairly compensate it for its injury, damage, and loss.

b. Punitive damages, against THE ARMOR DEFENDANTS and all Defendants named in their individual capacities, in an amount that will serve to adequately punish and deter the conduct in this Count.

c. The costs of suit and reasonable attorneys' fees.

d. Any other relief the Court deems appropriate.

## COUNT FOUR

### Negligence
**(Defendant County, Defendant Ford, in her individual and official capacity, Defendant Warden Reinhart, in his individual and official capacity, and the Corrections Officer Defendants)**

115.    PLAINTIFF restates and incorporates paragraphs 1 to 114 by reference as if fully rewritten herein.

116.    The Defendants named in this Count owed BROGAN these duties:

a. To exercise reasonable care not to act in a manner that unreasonably threatened her health and safety, including refraining from causing her serious physical harm and death.

b. During the time that she was in their custody, to ensure BROGAN received timely, adequate, physical and health assessment, evaluation, intervention, referral, treatment, and care.

c. To pass along information regarding her physical health that was known or should have been known to Defendants and that foreseeably would have saved BROGAN's life.

27

117.   The Defendants named in this Count breached these duties, and acted negligently by:

      a.  Failing to provide or refusing to provide BROGAN with access to timely adequate physical health assessment, evaluation, care, intervention, referral, and treatment, even though all of these were urgently needed to address her obvious, known, or knowable serious physical health conditions.

      b.  Failing to maintain BROGAN's medical records and jail records showing that BROGAN was a repeated drug offender, and had a history of drug abuse and prior episodes of drug withdrawal.

      c.  Failing to use the medical records and jail records that were actually known about BROGAN when each Defendant had custody of her.

      d.  Failing or refusing to timely and adequately classify and house BROGAN as a detainee with medical needs.

      e.  Committing the other acts detailed in all Counts in this Complaint.

      f.  Failing to conduct checks and observations of Ms. Brogan that would have saved her life.

      g.  Otherwise negligently, recklessly, or intentionally causing BROGAN to sustain the injuries that resulted in her wrongful and untimely death.

118.   Defendants COUNTY, FORD, WARDEN REINHART, and CORRECTIONS OFFICER DEFENDANTS breached their duties and were the direct and proximate cause of BROGAN's injuries and death.

28

119.    As a direct and proximate result of the negligence of the Defendants named in this Count, BROGAN endured extreme physical, mental, and emotional pain and suffering, and death.  The ESTATE incurred losses for funeral and burial expenses, lost net accumulations, and conscious pain and suffering endured by BROGAN just before death. As a direct and proximate result of these Defendants' violations of BROGAN's constitutional rights, BROGAN endured extreme physical, mental, and emotional pain and suffering, and death.  The ESTATE incurred losses for funeral and burial expenses, and lost net accumulations.   BROGAN'S CHILDREN suffered: (A) loss of support and services; (B) loss of companionship, instruction, and guidance; and (C) mental pain and suffering.

**WHEREFORE,** the PLAINTIFF seeks judgment against Defendants, jointly and severally, for:

a.  Compensatory damages in an amount that will fully and fairly compensate it for its injury, damage, and loss.

b.  Punitive damages against all Defendants named in their individual capacities, in an amount that will serve to adequately punish and deter the conduct in this Count.

c.  The costs of suit and reasonable attorneys' fees.

d.  Any other relief the Court deems appropriate.

## JURY DEMAND

The PLAINTIFF demands trial by jury on each count a jury is permitted to hear.

Respectfully submitted, this ___24th___ day of April 2017.

AARON L. WATSON, ESQ.
THE WATSON FIRM, PLLC.
1720 W. Fairfield Drive, Suite 100
Pensacola, FL 32501
Tel.: 850-607-2929
Fax: 850-607-2055
E-Mail: awatson@watsonfirmlaw.com
Florida Bar No: 0071091
Trial Counsel for Plaintiff, Sandra Brogan
as Personal Representative of the Estate
of April Brogan